**FOURTH DIVISION**
**DOYLE, P. J.,**
**ANDREWS and BOGGS, JJ.**

NOTICE: Motions for reconsideration must be
*physically received* in our clerk's office within ten
days of the date of decision to be deemed timely filed.
(Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008)
http://www.gaappeals.us/rules/

June 14, 2012

# In the Court of Appeals of Georgia

A12A0625. BLAKELY v. THE STATE.                              DO-023 C

DOYLE, Presiding Judge.

Michael Bernard Blakely was charged with possession of cocaine,[1] two counts of obstruction of a law enforcement officer,[2] and driving under the influence of alcohol to the extent that it was less safe ("DUI").[3] Blakely filed a motion to suppress, arguing that the police did not have probable cause to effect a traffic stop, and the trial court denied the motion following a hearing. At the conclusion of the bench trial, the trial court found Blakely guilty of possession of cocaine and two counts of obstruction, but found him not guilty of DUI. Blakely appeals the denial of his motion

---

[1] OCGA § 16-13-30 (a).

[2] OCGA § 16-10-24 (a).

[3] OCGA § 40-6-391 (a) (1).

for new trial, arguing that the trial court erred by denying his motion to suppress. We affirm, for the reasons that follow.

> When the evidence at a suppression hearing is uncontroverted and the credibility of witnesses is not in question, we conduct a de novo review of the trial court's application of the law to the undisputed facts. To the extent an issue concerns a mixed question of fact and law, we accept the trial court's findings on disputed facts and witness credibility unless they are clearly erroneous, but independently apply the law to the facts.[4]

So viewed, the record shows that on April 19, 2008, the Elbert County Sheriff's Department held a sobriety checkpoint, at which police had positioned marked patrol vehicles with their blue lights flashing. At approximately 10:00 p.m., Major Shane Bennett noticed the headlights on Blakely's vehicle approach the roadblock, at which point Blakely "immediately" made a "kind of sudden turn" into a driveway, backed out, and drove away from the checkpoint. Bennett testified that Blakely was "probably less than a quarter of a mile" from the checkpoint when he turned around, and Bennett "could barely see to where [Blakely] pulled in the drive." Bennett

---

[4] (Citation omitted.) *Jones v. State*, ___ Ga. ___ (Case No. S11G1054; decided May 7, 2012).

2

explained that the road curved, "with a hill," between the driveway where Blakely turned around and the roadblock.

Because Bennett believed that Blakely "appeared [to be] evading our checkpoint," Bennett followed Blakely in his patrol car and initiated a traffic stop. Blakely advised the officer that he turned around because he left his driver's license at a family member's house, and he repeatedly asked Bennett to "give him a break," explaining that he was a truck driver. According to Bennett, he smelled "a real strong odor of alcohol coming from [Blakely's] vehicle," and he could smell alcohol on Blakely's breath after he exited his vehicle. Bennett administered Blakely a field test for alcohol, which tested positive. When Bennett advised Blakely that he was under arrest and tried to handcuff him, Blakely physically resisted, and another officer had to use a taser on Blakely twice before they could get the handcuffs on him. When police searched Blakely incident to his arrest, they discovered in his sock a small, clear baggie containing cocaine.

At the suppression hearing, Bennett testified that Blakely "could probably barely see our blue lights when he turned into the drive[way]," and Bennett then clarified on cross-examination that "I'm not sure if he could see [the blue lights] or not. I mean, I don't know." At trial, the officer testified that the roadblock "[could]

3

be seen from where [Blakely] turned around."[5] Bennett conceded that Blakely did not commit a traffic offense or unsafe traffic maneuver, but Bennett testified that department policy required him to stop anyone who "turn[ed] around while we have [a] road check."

At the suppression hearing, Blakely testified that he left his father's house and was headed toward his girlfriend's house when he realized that he had left his wallet at his father's home. Blakely stated that he turned into a driveway, turned around, drove back in the opposite direction, and was then pulled over. According to Blakely, he never saw the roadblock.

The trial court denied Blakely's motion to suppress, and the case proceeded to a bench trial, after which Blakely was acquitted of DUI and convicted of possession of cocaine and two counts of obstruction of an officer.

On appeal, in a single enumeration of error, Blakely argues that the trial court erred by denying his motion to suppress because Bennett lacked a reasonable suspicion that Blakely had committed a crime when the officer effected the traffic stop. We disagree.

---

[5] "[W]e consider both the transcript of the hearing and the trial transcript in reviewing the evidentiary basis for the denial of a motion to suppress." *Pittman v. State*, 286 Ga. App. 415, 416 (650 SE2d 302) (2007) (punctuation omitted).

Although an officer may conduct a brief investigative stop of a vehicle, such a stop must be justified by specific, articulable facts sufficient to give rise to a reasonable suspicion of criminal conduct. Investigative stops of vehicles are analogous to *Terry*-stops[6] and are invalid if based upon only unparticularized suspicion or hunch. An investigatory stop must be justified by some objective manifestation that the person stopped is, or is about to be, engaged in criminal activity. This suspicion need not meet the standard of probable cause, but must be more than mere caprice or a hunch or an inclination.[7]

In *Jorgensen v. State*,[8] the defendant turned into the entrance to an apartment complex, "in a normal fashion," approximately 200 feet from a roadblock.[9] An officer decided to stop the defendant based on his intuition that the defendant, who was driving a BMW, did not live in the apartment complex, which the officer testified housed people without much money.[10] This Court reversed the trial court's denial of the defendant's motion to suppress because

---

[6] *Terry v. Ohio*, 392 U. S. 1 (88 SC 1868; 20 LE2d 889) (1968).

[7] (Citations and punctuation omitted.) *Jorgensen v. State*, 207 Ga. App. 545, 546 (428 SE2d 440) (1993).

[8] Id.

[9] See id. at 545.

[10] See id. at 546.

5

[t]he record [was] devoid of any articulable fact which would support the officer's intuition that the appellant was avoiding the roadblock. For example, *there was no indication in the record of any sharp driving maneuver, sudden turn*[,] *or reduction in speed or other facts which might tend to show that the appellant's actions were evasive.* The officer indicated in his response to a question posed to him by the trial judge that "it was just his intuition" that the appellant was turning into the apartment complex to avoid the roadblock. . . . [I]ntuition is insufficient to give rise to an articulable suspicion. The officer's stop of the appellant after he exited the car was unjustified in that the officer did not observe the commission of a crime by the appellant before the stop and during his testimony, did not state any facts that would indicate that the appellant was about to violate the law in any manner.[11]

We subsequently noted that

[t]he rule thus established in *Jorgensen* is that *completely normal* driving, even if it incidentally evades a roadblock, does not justify a *Terry*-type stop. Consistent with *Jorgensen,* we have[,] however[,] held in subsequent cases that abnormal or unusual actions taken to avoid a roadblock may give an officer a reasonable suspicion of criminal activity even when the evasive action is not illegal.[12]

---

[11] (Citation and punctuation omitted; emphasis supplied.) Id. at 546-547.

[12] (Emphasis supplied.) *Terry v. State*, 283 Ga. App. 158, 159 (640 SE2d 724) (2007), citing *Taylor v. State*, 249 Ga. App. 733, 735 (549 SE2d 536) (2001) and *Richards v. State*, 257 Ga. App. 358, 360 (1) (571 SE2d 172) (2002).

6

In *Jones v. State*,[13] a state trooper participating in a roadblock stopped a vehicle, which had turned into the parking lot of shopping center near the roadblock. Citing *Jorgensen*,[14] the Supreme Court of Georgia held that

> [a]lthough the trooper noticed [the defendant] as he turned into the parking lot, the trooper did not recall that [the defendant] made an abrupt turn. Without evidence of a specific driving violation or maneuver to support the officer's belief that [the defendant] was trying to avoid the roadblock, we conclude that the trooper lacked reasonable suspicion to stop [the defendant].[15]

Here, it is undisputed that Blakely did not commit any traffic offense. He did, however, make an immediate, sudden turn into the driveway, reverse course, and drive away from the checkpoint at the same time that the police officer noticed his headlights. Although Blakely testified that he did not see the police lights at the checkpoint and was merely turning around to retrieve his wallet, we are required to "accept the trial court's findings on disputed facts and witness credibility unless they

---

[13] ___ Ga. at ___ (Case No. S11G1054, decided May 7, 2012).

[14] 207 Ga. App. at 546.

[15] *Jones*, ___ Ga. at ___ (2).

7

are clearly erroneous."[16] Under these circumstances, where there was some evidence that Blakely attempted to avoid the roadblock, the trial court did not err by denying the motion to suppress and the subsequent motion for new trial.[17]

*Judgment affirmed. Andrews and Boggs, JJ., concur.*

---

[16] *Jones*, ___ Ga. at ____.

[17] See *Terry*, 283 Ga. App. at 160 (police "authorized to conclude that in turning off the roadway, engaging in a possibly illegal backing maneuver, and then driving away in the opposite direction, [the defendant] was attempting to avoid the road check"); *Jones v. State*, 259 Ga. App. 506, 507-508 (1) (578 SE2d 165) (2003) (traffic stop authorized based on the officer's observation that the defendant stopped abruptly and unsafely backed up the street to avoid roadblock); *Richards*, 257 Ga. App. at 359 (1) (officer had reasonable, articulable suspicion to stop the defendant, who, upon seeing a roadblock, stopped abruptly, reversed approximately 50 feet, and turned onto a side street); *Taylor*, 249 Ga. App. at 734 (traffic stop authorized because the defendant attempted to drive over a curb and turned abruptly into a closed shopping center upon seeing the roadblock). Cf. *Jorgensen*, 207 Ga. App. at 546; *Jones*, ___ Ga. at ___ (2).