**SECOND DIVISION**
**DOYLE, C. J.,**
**MILLER, P. J, and REESE, J.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules

**May 10, 2017**

# In the Court of Appeals of Georgia

A17A0087. CAFFEE v. THE STATE.                                      DO-003 C

DOYLE, Chief Judge.

Richard Caffee was charged with possession of less than one once of marijuana[1] and driving with an expired tag[2] after a police officer found a small baggie of marijuana in his shirt pocket during a traffic stop. The trial court denied Caffee's motion to suppress, but granted a certificate of immediate review, and we granted interlocutory review. We affirm for the reasons that follow.

When reviewing a trial court's ruling on a motion to suppress, an appellate court must construe the evidentiary record in the light most favorable to the factual findings and judgment of the trial court. This means that the reviewing court generally must accept the trial court's

---

[1] OCGA § 16-13-2 (b).

[2] OCGA § 40-2-8 (a).

findings as to disputed facts unless they are clearly erroneous, although the reviewing court may also consider facts that definitively can be ascertained exclusively by reference to evidence that is uncontradicted and presents no questions of credibility such as facts indisputably discernible from a videotape.[3]

So viewed, the record shows that on November 1, 2015, Deputy Mark Patterson observed an expired tag on Caffee's truck and pulled him over.[4] While speaking with him, Patterson "smelled green marijuana" coming from Caffee's truck and observed that Caffee's eyes were "bloodshot and glassy." At the suppression hearing, Patterson testified that he was familiar, based upon his training and experience, with the smell of burned and raw marijuana, as well as the signs and indications of recent marijuana use.

At Patterson's request, Caffee exited the vehicle and showed him his tongue; Caffee's taste buds were "white and risen," which condition Patterson testified was consistent with recent marijuana use. Patterson asked Caffee whether he had marijuana in his truck, and Caffee responded that he did not. Patterson then decided

---

[3] (Punctuation omitted.) *State v. Clark*, ___ Ga. ___, ___ (1) (Case No. S17A0350, decided Apr. 17, 2017), quoting *State v. Allen*, 298 Ga. 1 (1) (a) ( 779 SE2d 248) (2015).

[4] When Patterson saw Caffee's face as he approached his truck, Patterson realized that he had pulled him over earlier that same year for an expired tag.

2

to search Caffee's truck for drugs. While waiting for back-up to arrive, Patterson conducted a pat-down of Caffee for weapons. After back-up arrived approximately ten minutes later, Patterson searched the truck and found two small bottles that smelled of green marijuana, but contained no contraband. No marijuana was found in Caffee's vehicle. According to Patterson, the odor of green marijuana dissipated from the truck during the search, while the doors were open.

When Patterson approached Caffee to discuss the two containers he found in the truck, Patterson began "smelling marijuana again pretty strongly." Patterson searched Caffee's outer clothing, "feeling the pockets and looking in them" as he did so, and he discovered a small plastic bag containing less than an ounce of marijuana. The entirety of the encounter was approximately 30 minutes.

Caffee was charged with possession of marijuana less than one ounce and driving with an expired tag. He filed a motion to suppress, and the trial court held a hearing, at which Patterson testified as the sole witness, and the State played the videotape of the traffic stop and encounter.[5] After the hearing, the trial court denied the motion, concluding that Patterson had reasonable articulable suspicion to justify

---

[5] Caffee is visible during a portion of the videotape, but the search of his pockets takes place off camera.

the traffic stop; the warrantless search of Caffee's truck was justified based on the odor of marijuana; and there was no unreasonable delay or unconstitutional expansion of the initial traffic stop. The court rejected the State's contention that Patterson's search of Caffee's shirt pocket containing the baggie of marijuana was a lawful *Terry*[6] pat-down, but nevertheless concluded that based upon "the totality of the circumstances," Patterson had sufficient probable cause to search Caffee's shirt pocket. This interlocutory appeal followed.

1. Caffee argues that the trial court erred by denying his motion to suppress because Patterson was not authorized to search Caffee's shirt pocket without a warrant.[7] We disagree.

---

[6] *Terry v. Ohio*, 392 U. S. 1 (88 SCt 1868, 20 LE2d 889) (1968). "A *Terry* pat-down, unlike a full search, is conducted for the purpose of ensuring the safety of the officer and of others nearby, not to obtain evidence for use at trial. It is a minimal intrusion reasonably designed to discover guns, knives, clubs, or other weapons that could prove dangerous to a police officer. Under *Terry*, an officer is authorized to pat down a suspect's outer clothing. He may intrude beneath the surface in only two instances: (1) if he comes upon something that feels like a weapon, or (2) if he feels an object whose contour or mass makes its identity as contraband immediately apparent, i.e., the "plain feel" doctrine." *Johnson v. State*, 297 Ga. App. 847, 848 (678 SE2d 539) (2009) (punctuation omitted).

[7] On appeal, Caffee does not challenge the basis for the traffic stop, the initial *Terry* pat-down, or the search of his truck.

In *State v. Kazmierczak*,[8] which involved the sufficiency of an application for a warrant to search a home based upon an officer's detection of the odor of marijuana, this Court held: "[I]f the affidavit for the search warrant contains sufficient information for a magistrate to determine that the officer who detected the odor of marijuana emanating from a specified location is qualified to recognize the odor, the presence of such an odor may be the sole basis for the issuance of a search warrant."[9]

> *Kazmierczak* overruled contrary authority and recognized that the presence of an odor coming from a particular place may be "evidence of [the] most persuasive character" in support of probable cause to issue a search warrant. Accordingly, a police officer qualified by training or experience to recognize the distinctive odor of raw marijuana may reasonably infer from the officer's detection of that odor coming from a particular place that marijuana will be found in that place.[10]

Here, based upon his testimony regarding his experience and training, Patterson's detection of the smell of raw marijuana alone would have supported a

---

[8] 331 Ga. App. 817 (771 SE2d 473) (2015).

[9] Id. at 823.

[10] (Citations omitted.) *State v. Edwards*, 332 Ga. App. 342, 345 (772 SE2d 430) (2015), quoting *Kazmierczak*, 331 Ga. App. at 822-823.

5

search warrant. The issue in this case, however, is whether there was probable cause for the *warrantless* search of Caffee's shirt.

> For probable cause to search a person without a warrant, we must look to the parameters of police knowledge at the time the search occurred to determine if that knowledge was such as would justify a man of reasonable caution in believing that an offense has been or is being committed, and this requires merely a probability – less than a certainty but more than a mere suspicion or possibility. The reviewing court must determine under the totality of the circumstances whether the evidence in this case showed a fair probability that contraband or evidence of a crime would be found in a particular place.[11]

In this case, there was evidence that Patterson, who had training and experience in detecting the odor of raw marijuana and physical manifestations of recent marijuana use, (1) noticed that Caffee's eyes were bloodshot and glassy, and his taste buds were "white and risen"; (2) smelled raw marijuana when he approached Caffee's truck; (3) noticed that the odor dissipated during the search of the truck while the doors were open and while Caffee was not in the vehicle; (4) did not find marijuana in the truck; and (5) smelled marijuana "pretty strongly" again when he approached Caffee after the vehicle search. Given this evidence, we find no error in the trial

---

[11] (Citations and punctuation omitted.) *Brooks v. State*, 208 Ga. App. 680, 681 (1) (431 SE2d 466) (1993).

6

court's conclusion that "under the totality of the circumstances in this case . . . Deputy Patterson had sufficient probable cause to search [Caffee] a second time to seek the raw marijuana he smelled coming from [Caffee's] person."[12]

2. Caffee also contends that Patterson exceeded the scope of the initial traffic stop and unnecessarily prolonged it to conduct the search of Caffee's shirt pocket. This enumeration presents no basis for reversal.

"The law generally provides that an investigatory traffic stop should be limited in time to that minimally necessary to investigate the allegation invoking suspicion,

---

[12] See *State v. Cannon*, 253 Ga. App. 445, 447-448 (559 SE2d 76) (2002) (reversing the grant of motion to suppress because the totality of the circumstances – the odor of marijuana, admission of recent marijuana use, furtive movements and attempts to avoid a pat-down, nervousness, and police knowledge of defendant's prior drug arrests – established probable cause to search the defendant's pants); *Patman v. State*, 244 Ga. App. 833, 835-836 (537 SE2d 118) (2000), disapproved by *Kazmierczak*, 331 Ga. App. at 823 (holding that "[t]o the extent that our holdings in *Patman* [and other listed cases] could be interpreted as support for the premise that the odor of raw marijuana emanating from a particular location cannot be the sole basis for the issuance of a search warrant for that location, such interpretations are hereby disapproved"); *Brooks*, 208 Ga. App at 681 (1); *Williams v. State*, 187 Ga. App. 409, 412 (2) (370 SE2d 497) (1988). See also *United States v. Hyppolite*, Case No. 13-10471, 609 Fed. Appx. 597, 605 (II) (A) (1) (11th Cir.) (2015) (unpublished).

and limited in scope to identification and limited questioning reasonably related to the circumstances that justified the initiation of the momentary stop."[13]

In this case, Patterson detected the odor of green marijuana immediately upon approaching Caffee's vehicle. After speaking to Caffee briefly and observing physical symptoms consistent with recent marijuana use, Patterson decided to search the truck, and he patted Caffee down for weapons while they waited for back-up, which arrived ten minutes after the traffic stop.[14] The search of Caffee's truck took approximately 10 to 15 minutes. Once Patterson returned to Caffee after the search, he again recognized the strong smell of marijuana emanating from Caffee and immediately searched his clothing. Approximately 30 minutes elapsed from the time of the initial traffic stop until Caffee's arrest.

---

[13] (Punctuation omitted.) *Barraco v. State*, 244 Ga. App. 849, 850 (1) (537 SE2d 114) (2000), quoting *Smith v. State*, 216 Ga. App. 453, 454-455 (454 SE2d 635) (1995).

[14] Caffee had two large dogs in his truck, which Patterson had him remove and hold while the truck was searched.

Under these circumstances, we conclude that Patterson's investigation did not exceed the permissible scope of the stop nor unnecessarily prolong it.[15]

*Judgment affirmed. Miller, P. J., and Reese, J., concur.*

---

[15] See *Davis v. State*, 322 Ga. App. 217, 218-220 (744 SE2d 393) (2013); *Barraco*, 244 Ga. App. at 850 (1); *Pollack v. State*, 294 Ga. App. 400, 403-404 (3) (b) (670 SE2d 165) (2008).